**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**


**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**                                                                              **No. 13CR1152 WJ**

**GABRIEL MIRABAL,**

    **Defendant.**


**ORDER DENYING DEFENDANT MIRABAL'S MOTION FOR DISCOVERY**

    **THIS MATTER** comes before the Court upon Defendant's Motion for Discovery, filed January 22, 2014 (**Doc. No. 79**). Having considered the parties' briefs, oral argument presented at the hearing conducted on April 15, 2014, and the applicable law, the Court finds that Defendant's motion is not well-taken and, therefore, is DENIED.

**Background**

    Defendant was charged pursuant to a multi-count indictment regarding an alleged drug trafficking conspiracy.  Defendant filed the instant motion seeking discovery of several different categories of evidence.  At the hearing on the Motion, Defendant represented to the Court that the disputes regarding following categories of evidence had either been resolved or would be addressed in another Motion: 1) Reports of scientific tests or examinations; and 2) Information regarding informants and cooperating witnesses.  Accordingly, the Court will only address the four remaining categories of evidence: 1) notes made by government investigators; 2) identities of law enforcement officers involved in the investigation of this case; 3) Giglio information; and 4) cell phone data.

I.      **Legal Standard**

There is "no general constitutional right to discovery in a criminal case."  Weatherford v.

Bursey, 429 U.S. 545, 559 (1977).  "[T]he *Brady* rule, Rule 16 and the Jencks Act, exhaust the

universe of discovery to which the defendant is entitled."  United States v. Presser, 844 F.2d

1275, 1285 (6th Cir. 1988).

*Rule 16*

Federal Rule of Criminal Procedure 16(a)(1) establishes guidance as to the nature and

scope of pretrial discovery that the United States must provide. As to documents and objects,

Rule 16(a)(1)(E) provides the following:

> Upon a defendant's request, the government must permit the defendant to inspect
> and to copy or photograph books, papers, documents, data,  photographs, tangible
> objects, buildings or places, or copies or portions of any of these items, if the item
> is within the government's possession, custody, or control and:
>> (i) the item is material to preparing the defense;
>> (ii) the government intends to use the item in its case-in-chief at trial; or
>> (iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E).

A defendant must make a prima facie showing of materiality before he is entitled to

obtain requested discovery.  See United States v. Mandel, 914 F.2d 1215, 1219 (9th Cir. 1990).

"Neither a general description of the information sought nor conclusory allegations of materiality

suffice; a defendant must present facts which would tend to show that the Government is in

possession of information helpful to the defense."  Id.  The term "defense" means an argument in

response to the prosecution's case-in-chief, *i.e.*, an argument that refutes the government's

claims that the defendant committed the crime charged.  See United States v. Armstrong, 517

U.S. 456, 462 (1996).  To show materiality, the evidence must bear some abstract logical

relationship to the issues in the case such that pretrial disclosure would enable the defendant

significantly to alter the quantum of proof in his favor.  United States v. Lloyd, 992 F.2d 348, 350-51 (D.C. Cir. 1993). This materiality requirement is not a heavy burden; rather, evidence is material as long as there is a strong indication that the evidence "will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal."  Id. at 351 (internal quotations omitted). Nevertheless, ordering the production by the government of discovery without any preliminary showing of materiality is inconsistent with Rule 16.  Mandel, 914 F.2d at 1219.

*Brady Material*

The Brady doctrine was established by the Supreme Court in Brady v. Maryland, 373 U.S. 83, 87 (1963):

> We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

The Court in Kyles v. Whitley, 514 U.S. 419 (1995), described the responsibility of the government in dealing with Brady:

> But the prosecution, which alone can know what is undisclosed, must be assigned the consequence responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of "reasonable provability" is reached. This in turn means that the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police. But whether the prosecution succeeds or fails in meeting this obligation, the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of important is inescapable.

Id. at 437-438.

Brady also extends to evidence affecting witness credibility.  See Giglio v. United States, 405 U.S. 150, 154 (1972).

The Government is not required to produce evidence simply because it *might* be exculpatory. United States v. Agurs, 427 U.S. 97, 110, n. 16 (1976) ("It is not to say that the State has an obligation to communicate preliminary, challenged, or speculative information."); United States v. Fleming, F.3d 1325, 1331 (10th Cir. 1994) (noting "[t]he mere possibility that evidence is exculpatory does not satisfy the constitutional materiality standard."). The Court does not have a duty to directly supervise the Government's disclosure of Brady information, as such supervision would necessitate a complete review of all material gathered during the Government's investigation. See United States v. McVeigh, 923 F. Supp. 1310, 1313 (D. Colo. 1996). Rather, the duty to determine what disclosure is required under Brady rests with the prosecution. See Bank v. Reynolds, 54 F.3d 1508, 1517 (10th Cir. 1995); McVeigh, 923 F.Supp. at 1313. The Court should rely on the Government's representations of its compliance with Brady unless the defendant shows cause to question them and the materiality of the evidence sought. See McVeigh, 923 F.Supp. at 1314; see also Banks v. Dretke, 540 U.S. 668, 696 (2004) ("[o]rdinarily, we presume that public officials have properly discharged their official duties.").

*Jencks Act Material*

The Jencks Act, 18 U.S.C. §3500, provides ,"[i]n any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500 (a). The Act requires the government to provide the statements only *after* the witness has testified. See 18 U.S.C. § 3500 (b). Jencks material differs from Brady material in that it covers any statement made by the Government's witness whether or not it is directly contradictory to his or her testimony. United States v.

Smaldone, 544 F.2d 456, 460 (10th Cir. Colo. 1976). Here, Defendant asks the Court to order the Government to go beyond what is required under the Jencks Act and direct the Government to provide Jencks material months ahead of trial.

As stated on the record at the April 15, 2014 hearing, the Court is familiar with the practice of this United States Attorneys' Office to provide Jencks material prior to the start of trial.  This custom exceeds the Government's duty under the Jencks Act and the case law interpreting it.  While the Court encourages the United States Attorneys' Office to hold with their typical procedure of providing Jencks Act material prior to trial, the Court will not order the Government to produce Jencks material months prior to trial.  In fact, based upon the plain wording of the Jencks Act, even if the Court was inclined to order early production of Jencks Act material, the Court questions whether it has the authority to issue such an order.

## II.    Specific Discovery Requests

*Notes*

Defendant requests the production of any "rough notes" taken by any of the various law enforcement officers involved in this case.  Defendant argues that this information is necessary in order to challenge the validity of the "Title 3", 18 U.S.C. §§2510-22, wiretap warrant executed in this matter.[1]  The Government argues that these materials are protected from disclosure under Fed. R. Crim. 16(a)(2).

Fed. R. Crim. P. 16(a)(2) states that, "[e]xcept as Rule 16(a)(1) provides otherwise," Rule 16 "does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in

---

[1] Defendant repeatedly referenced the standard for a Title 3 wiretap.  However, Defendant pointed to no language in the statute and the Court found none that stated that Title 3 created a right for a defendant to obtain copies of the investigator's notes.  In fact, Title 3 only requires that the defendant be provided with a copy of the Court Order authorizing the wiretap and a copy of the application.  See 18 U.S.C. §2515(9).

connection with investigating or prosecuting the case."  To qualify for protection under the first exemption of Rule 16(a)(2), materials must have been created by a government agent or attorney to support a federal prosecution of the defendant, must be in the possession of the federal government, and must constitute an internal, non-public document.  United States v. Fort, 472 F.3d 1106, 1120, n. 15 (9th Cir. 2007); United States v. Green, 144 F.R.D. 631, 641 (W.D.N.Y. 1992) (holding government documents discoverable "unless they have become the work product of the federal investigators").  The Tenth Circuit noted in United States v. Lane, 574 F.2d 1019, 1022 (10th Cir.1978), "[n]otes of undercover activity may well contain impressionary matter involving diverse persons. We think it would be a judicial invasion into proper law enforcement to require the preservation of such notes and are convinced that to reverse this case as appellant urges at this late date would thwart justice."  See also United States v. Rewald, 889 F.2d 836, 867 (9th Cir.1989) (reports that embody only the agent's "epitomization, interpretation, or impression of an interview are not producible."), modified on other grounds, 902 F.2d 18 (9th Cir.1990).

Instead of demonstrating why the law enforcement agents' notes are not exempted from disclosure under Fed. R. Crim. 16(a)(2), Defendant emphasizes how important these materials might be.  However, even if the agents' notes were "material to the preparation of a defense" as contemplated under Rule 16(a)(1)(E), Fed. R. Crim. 16(a)(2) specifically exempts this type of evidence from disclosure, regardless of how important it is to the defendant.  The Court finds that the agents' notes requested by Defendant are "internal government documents" made for the purposes of prosecuting Defendant.  Accordingly, the Court will not order the disclosure of this information under Fed. R. Crim. 16.  There is an argument that these notes constitute Jencks material.  However, the Court has already stated it will not order early production of Jencks

material.  To the extent the agents' notes constitute <u>Brady</u> or Jencks material, the Court trusts that the Government will disclose it in a timely manner, but it need not finally resolve that question today.  If the Government fails to comply with either of these requirements, the Court expects that Defendant will alert the Court to the United States' shortcomings.

*Identities of All Law Enforcement Officers Involved in this Matter*

Defendant requests a definitive list of all the law enforcement personnel involved with the investigation and prosecution of this matter along with their agency affiliation.   The Government flatly denies that Defendant is entitled to discover this information. The Court agrees with the Government that Defendant is not entitled to this category of evidence at this time.   "[T]he Due Process Clause does not require the government to disclose before trial the names of its witnesses, just so the defense can have sufficient time to investigate their backgrounds for impeachment information.  <u>United States v. Ashley</u>, 274 F. App'x 693, 697 (10th Cir. 2008) (citing <u>Weatherford v. Bursey,</u> 429 U.S. 545, 559 (1977) (rejecting the notion that the Due Process Clause required the government to disclose the name of an adverse witness so the defense can "do a background check" on him "for purposes of cross-examination")); <u>United States v. Nevels</u>, 490 F.3d 800, 803 (10th Cir. 2007) ("It is settled law in this circuit that, in the absence of a statutory or constitutional requirement, ... there [is no] requirement that the government disclose its witnesses in any manner, except in a case where trial is for treason or other capital offense.") (citation omitted).   Accordingly, the Court will not compel the Government to turn over a witness list at this point.  Of course, the Government is still required to comply with <u>Brady</u> requirements.

### *Giglio* Information

Defendant notes that he has four co-defendants in this matter and asks that in the event that any of them plead guilty, that the Government provides all statements and/or promises made to them in exchange for their testimony.  Defendant also requests all other information that could be used for the impeachment of any government witness.  The Government asserts that Defendant's request is premature as no plea agreements have been reached in this matter.  The Court agrees; the Government is aware of its obligation under Giglio and the Court sees no need to address this issue at the present time.

*Cell Phone Data*

The affidavit for the Title 3 wiretap relied heavily on toll records, pen registers, and trap and trace information.  Defendant argues that because the validity of the Title 3 wiretap is a central issue in this case, he is entitled to have access to the underlying information.  The Government correctly notes that Title 3 itself does not entitle Defendant to the data underlying the application for the Title 3 wiretap.  See 18 U.S.C. §2515(9).  Defendant also makes a Franks challenge to the affidavit.  In Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court ruled that if a police officer makes a false statement knowingly and intentionally, or with reckless disregard for the truth in an affidavit for a warrant, then the false statements must be disregarded in deciding whether the affidavit demonstrates probable cause.  A defendant is entitled to a hearing after he makes a "substantial preliminary showing that a false statement knowingly and intentionally or with reckless disregard for the truth was included by the affiant in the warrant affidavit, and the… the allegedly false statement was necessary to a finding of probable cause." Id., 155-56.  "The requirement of a substantial preliminary showing would suffice to prevent the misuse of a veracity hearing for purposes of discovery or obstruction." Id., at 170.

Defendant notes that the affiant stated that using a pole camera at Defendant's would not be feasible.[2]  A few days later, however, a pole camera was successfully installed at Defendant's residence.   Defendant calls this discrepancy "a blatant lie" that calls the entire affidavit in question.  See (Doc. No. 83), p. 14.   Defendant appears to be conflating the standard for a Franks hearing and discovery under Fed. R. Civ. P. 16.  Defendant may make a Franks challenge and may be entitled to a hearing, but that is a separate matter from making a request for written discovery.  Further, the Court does not see a logical connection between the statement by the affiant regarding the pole camera and the underlying cell phone data.  Defendant has not demonstrated a problem with the underlying cell phone data that is the subject of the discovery request.  Accordingly, the Court finds that he is not entitled to discovery of the cell phone data at this time.

**THEREFORE, IT IS ORDERED**, that Defendant's Motion for Discovery **(Doc. No. 79)** is **DENIED**.

_____
UNITED STATES DISTRICT JUDGE

---

[2]   This is relevant because a Title 3 wiretap application requires showing that the evidence cannot be obtained through normal investigative procedures.   See 18 U.S.C. § 2518(3)(c)(3).